UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
(FILED ELECTRONICALLY)

CIVIL ACTION NO. _5:19CV-189-TBR_____

UNITED STATES OF AMERICA                                                    PLAINTIFF

vs.

HEATHER D. BOWLES                                                          DEFENDANTS
a/k/a HEATHER DAWN BOWLES
f/k/a HEATHER DAWN JONES
241 Bridwell Loop
Marion, KY 42064

BYRON KEITH BOWLES
241 Bridwell Loop
Marion, KY 42064

FARMERS BANK & TRUST COMPANY
SERVE: J. Wade Berry
Registered Agent
201 S. Main Street
P. O. Box 151
Marion, KY 42064

COMMONWEALTH OF KENTUCKY
SERVE: Attorney General
700 Capitol Avenue, Suite 118
Frankfort, KY 40601-3449

## **COMPLAINT FOR FORECLOSURE**

Plaintiff, the United States of America, states as follows:

1.     This is a mortgage foreclosure action brought by the United States of America on

behalf of its agency, the United States Department of Agriculture Rural Housing Service also

known as Rural Development (hereinafter collectively "RHS").

2.     Jurisdiction arises under 28 U.S.C. § 1345.  Venue is proper in this judicial

division, where the subject property is located.

3.       RHS is the holder of a promissory note ("the Note") executed for value on December 28, 2017 by **Heather D. Bowles, also known as Heather Dawn Bowles and formerly known as Heather Dawn Jones** ("the Borrower").  The principal amount of the Note was $125,000.00, bearing interest at the rate of 3.25 percent per annum, and payable in monthly installments as specified in the Note.  A copy of the Note is attached as **Exhibit A** and incorporated by reference as if set forth fully herein.

4.       The Note is secured by a Real Estate Mortgage (the "Mortgage") recorded on January 2, 2018, in Mortgage Book 223, Page 498, in the Office of the Clerk of Crittenden County, Kentucky.  Through the Mortgage, the Borrower and her current spouse, **Bryon Keith Bowles**, granted RHS a mortgage lien against the real property including all improvements, fixtures and appurtenances thereto at 241 Bridwell Loop, Marion, Crittenden County, Kentucky (the "Property") and described in more detail in the Mortgage.  A copy of the Mortgage is attached as **Exhibit B** and incorporated by reference as if set forth fully herein.

5.       To receive subsidies on the loan, the Borrower signed a Subsidy Repayment Agreement authorizing RHS to recapture, upon transfer of title or non-occupancy of the Property, any subsidies granted to her by RHS.  A copy of the Subsidy Repayment Agreement is attached as **Exhibit C** and incorporated by reference as if set forth fully herein.

6.       The Borrower, when known as Heather D. Jones, initially acquired the Property with her then-husband, David G. Jones, by Deed dated September 8, 2004 and recorded September 9, 2004 in Deed Book 199, Page 740, in the Office of the Clerk of Crittenden County, Kentucky.

7.       Borrower and David G. Jones were later divorced, and David G. Jones executed a Quitclaim Deed conveying his interest in the Property to the Borrower.  This Quitclaim Deed

2

was recorded on January 2, 2018 in Deed Book 235, Page 75 with the Office of the Clerk of Crittenden County, Kentucky.

8.      The Borrower and Defendant, **Bryon Keith Bowles**, were married as evidenced by a result of a Marriage License recorded October 20, 2017, of record in Marriage Book 66, Page 72, in the Office of the Clerk of Crittenden County.

9.      The Borrower has defaulted on the Note and Mortgage by failing to make payments when due.

10.     RHS has, in accordance with the loan documents, accelerated the loan and declared the entire principal balance, together with all accrued and unpaid interest and all other sums due under the loan documents, to be due and payable.  Further, RHS sent notice to the Borrower of the default, acceleration of the loan, intent to proceed with foreclosure, and her opportunity for administrative review.

11.     In accordance with the loan documents, the United States is entitled to enforce the Mortgage through this foreclosure action and to have the Property sold to pay all amounts due, together with the costs and expenses of this action.

12.     The unpaid principal balance on the Note is $121,423.75 with accrued interest of $6,151.83 through November 18, 2019 with escrow charges of $2,385.32, late charges in the amount of $206.00, and fees assessed of $1,663.93, for a total unpaid balance of $131,830.83 as of November 18, 2019.  Interest is accruing on the unpaid principal balance at the rate of $10.9577 per day after November 18, 2019.

13.     The Property is indivisible and cannot be divided without materially impairing its value and the value of RHS's lien thereon.

14.     Defendant **Byron Keith Bowles**, as spouse of the Borrower, may claim a spousal interest in the Property, which interest, if any, is inferior in rank and subordinate in priority to

3

RHS's mortgage lien on the Property.  Said Defendant is called upon to come forth and assert interests in or claims upon the Property, and offer proof thereof, or be forever barred.

15.     Defendant **Farmers Bank and Trust Company** may claim an interest in the Property by virtue of a mortgage granted by prior owners Russell B. Ford, Jr., and Gwendola A. Ford, and recorded August 8, 1985, of record in Mortgage Book 288, Page 420, in the Crittenden County Clerk's Office.  Said Mortgage is attached as **Exhibit D** and may have been satisfied but not released in the public record.  Plaintiff calls upon this Defendant to come forth and assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

16.     Defendant the **Commonwealth of Kentucky** may claim an interest in the Property by virtue of a Notice of Recoupment Lien against David Jones and recorded on November 27, 2017, in Encumbrance Book 20, Page 280 in the Crittenden County Clerk's Office.  A copy of the Recoupment Lien is attached as **Exhibit E** and incorporated by reference as if set forth fully herein.  Plaintiff calls upon this Defendant to come forth and assert its interest in or claim upon the Property, if any, and offer proof thereof, or be forever barred.

17.     There are no other persons or entities purporting to have an interest in the Property known to the Plaintiff.

WHEREFORE, Plaintiff, the United States of America, on behalf of RHS, demands:

a.     Judgment against the interests of the Defendants in the Property in the principal amount of $121,423.75, plus $6,151.83 in interest as of November 18, 2019, and $2,385.32 in escrow charges, late charges in the amount of $206.00, and fees assessed of $1,663.93, for a total unpaid balance due of $131,830.83 as of November 18, 2019, with interest accruing at the daily rate of $10.9577 from November 18, 2019, until the date of entry of judgment, and interest thereafter according to law, plus any additional costs, disbursements and expenses advanced by the United States;

4

b. That the United States be adjudged a lien on the Property, prior and superior to any and all other liens, claims, interests and demands, except liens for unpaid real estate ad valorem taxes;

c. That the United States' lien be enforced and the Property be sold in accordance with Title 28 U.S.C. §§ 2001-2003 subject to easements, restrictions and stipulations of record, but free and clear of all other liens and encumbrances except liens for any unpaid ad valorem real property taxes;

d.  That the proceeds from the sale be applied first to the costs of this action, second to any ad valorem real property taxes, if any, third to the satisfaction of the debt, interest, costs and fees due the United States, with the balance remaining to be distributed to the parties as their liens or interests may appear;

e. That the Property be adjudged indivisible and be sold as a whole; and

f. That the United States receive any and all other lawful relief to which it may be entitled.

<div style="margin-left:40%">

UNITED STATES OF AMERICA

RUSSELL M. COLEMAN
United States Attorney

s/ William F. Campbell
William F. Campbell
Katherine A. Bell
Assistant United States Attorneys
717 West Broadway
Louisville, Kentucky  40202
Phone:  502/582-5911
Fax:   502/625-7110
bill.campbell@usdoj.gov
Katherine.bell@usdoj.gov

</div>

Form RD 1940-16
(Rev. 7-05)

Form Approved
OMB No. 0575-0172

**UNITED STATES DEPARTMENT OF AGRICULTURE
RURAL HOUSING SERVICE**

**PROMISSORY NOTE**

Type of Loan   SECTION 502

Loan No. ▓▓▓▓▓▓▓

Date: _12/28_ 20 _17_

**SATISFIED**

This _____ day of _____,20 _____
United States of America
By: _____
Title: _____
USDA, Rural Housing Services

241 Bridwell Loop

_____
(Property Address)
Marion_____, Crittenden_____, KY_____
(City or Town)              (County)           (State)

**BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors) ("Government") $ _125,000.00_ (this amount is called "principal"), plus interest.

**INTEREST.** Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of _____3.2500_____ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

**PAYMENTS.** I agree to pay principal and interest using one of two alternatives indicated below:

I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____, _____ shall be added to the principal. The new principal and later accrued interest shall be payable in _396_ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $_____, and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

II. Payments shall not be deferred. I agree to pay principal and interest in _____396_____ installments as indicated in the box below.

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the _28th_ day of each month beginning on _January 28_ _2018_ and continuing for _395_ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on _December 28_ _2050_, I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ _515.01_. I will make my monthly payment at _the post office address noted on my billing statement_____ or a different place if required by the Government.

**PRINCIPAL ADVANCES.** If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

**HOUSING ACT OF 1949.** This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

1

GOVERNMENT
EXHIBIT
**A**

Account #

**LATE CHARGES.** If the Government has not received the full amount of any monthly payment by the end of ___15___ days after the date it is due, I will pay a late charge. The amount of the charge will be _____4_____ percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once for each late payment.

**BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

**ASSIGNMENT OF NOTE.** I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

**CREDIT ELSEWHERE CERTIFICATION.** I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

**USE CERTIFICATION.** I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

**LEASE OR SALE OF PROPERTY.** If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

**REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT.** I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

**SUBSIDY REPAYMENT AGREEMENT.** I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

**CREDIT SALE TO NONPROGRAM BORROWER.** The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

**DEFAULT.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as described in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

Account # ▮▮▮▮▮▮

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA Rural Housing Service, c/o Customer Service Branch Post Office Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

_____ Seal        _____ Seal
Borrower Heather D. Bowles                    Borrower

_____ Seal        _____ Seal
        Borrower                              Borrower

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ | |

3

AFTER RECORDING MAIL TO:

**USDA/RURAL DEVELOPMENT**
**U. S. Department of Agricultural**
**1000 Commonwealth Drive**
**Mayfield, KY 42066**

[Space Above This Line For Recording Data]

Form RD 3550-14 KY
(Rev. 12-05)

Form Approved
OMB No. 0575-0172

United States Department of Agriculture
Rural Housing Service

# MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("Security Instrument") is made on December 28, 2017
The mortgagor is HEATHER D. BOWLES, FORMERLY HEATHER JONES, AND HER HUSBAND, BRYON BOWLES.

This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency, United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center, United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called "Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not paid earlier, due and payable on the maturity date: 12-28-2050.

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| 12/28/2017 | $125,000.00 | 12/28/2050 |

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a. For this purpose, Borrower does hereby mortgage, grant, and convey to Lender the following described property located in the County of Crittenden, State of Kentucky

## SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART THEREOF

which has the address of     241 Bridwell Loop, Marion, Crittenden County, Kentucky 42064          ("Property Address");

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

GOVERNMENT
EXHIBIT
**B**

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures which now or hereafter are a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Page 2 of 6

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market

value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15. Borrower's Copy.** Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

**17. Nondiscrimination.** If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

**19. Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Page 4 of 6

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**21. Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:**

**22. SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

**23.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

**24.** Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the Property to a new Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

**25. Release.** Upon termination of this mortgage, after payment in full, the mortgagee, at Borrower's expense, shall execute and file or record such instruments of release, satisfaction and termination in proper form pursuant to the requirements contained in KRS 382.365

**26. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider    ☐ Planned Unit Development Rider    ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument

_[signature]_ [SEAL]
HEATHER D. BOWLES, FORMERLY
HEATHER JONES

_[signature]_ [SEAL]
BRYON BOWLES

STATE OF KENTUCKY

**ACKNOWLEDGMENT**

COUNTY OF CRITTENDEN

Before me, _Robert B. Frazer_ , a Notary Public in and for the

County of _CRITTENDEN_ , personally appeared _HEATHER O. Bowles & husband Braylon Bowles_

_____ who acknowledged that _each_ executed the foregoing instrument on the _28th_ day of

_Dec._ , _2017_ as their free act and deed.

WITNESS my hand and official seal this _28th_ day of _Dec_ , _2017_.

[SEAL]
Robert B. Frazer
Notary Public, ID No. 509016
State At Large, Kentucky
My Commission Expires on April 26, 2018

_____ Notary Public

My commission expires: _4/26/2018_

**PREPARER'S STATEMENT**

The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of:

Frazer & Massey, Attorneys at Law

P.O. Box 361

Marion, Kentucky 42064

_____

ROBERT B. FRAZER

---

**RECORDER'S CERTIFICATE**

STATE OF KENTUCKY

COUNTY OF CRITTENDEN

I, _____, Clerk of the County Court for the County aforesaid, do certify that the

foregoing mortgage was on the _____ day of _____, _____,

lodged for record _____ at _____ o'clock __ M., whereupon the same, with the foregoing and this certificate, have been duly

recorded in my office.

Given under my hand this _____ day of _____, _____.

_____

_Clerk of Crittenden County Court_

By _____, D.C.

Exhibit "A"

In Re:  Heather D. Bowles, formerly Heather D. Jones and her husband, Bryon Bowles

TRACT 1

Beginning at an iron pin on the east side of the Bridwell Road about ¾ mile northwest of the center of Marion, being 15 feet from the center of the road and also being 401.4 feet north of the north side of Jackson Street or Todd Road and being S. 31 deg. 37 min. E. 517.33 feet from the city limits marker #3 and corner to Tract #2 as surveyed this date; thence with the south line of Tract #2 N. 64 deg. 25 min. E. 647.78 feet to an iron pin, corner to Davidson; thence with her line S. 23 deg. 43 min. E. 463.17 feet to an iron pin on the north side of Jackson Street (a/k/a Todd Road); thence with the north line of said street S. 69 deg. 55 min. W. 643.94 feet to an iron pin on the east side of Bridwell Road; thence with the road N. 24 deg. 24 min. W. 401.38 feet to the beginning, containing 6.40 acres by survey.

TRACT 2

A certain lot or parcel of land near the town of Marion in Crittenden County, Kentucky, and known as a part of the Haynes Brothers land and bounded as follows:

BEGINNING at a stake or stone, corner to Lewis and Todd; running thence west course 450 feet to a stake or stone in G.C. Johnson's line; thence a north course 117 feet to a stake or stone in Lewis and Johnson's line; thence east course 450 feet with Lewis line to a stake or stone; thence a south course with Lewis line 117 feet to the place of beginning.

SOURCE OF TITLE: This being the same property conveyed to David G. Jones and his wife, Heather D. Jones, by Constance M. Voss (formerly Constance M. Sherfinski, by Deed dated September 8, 2004 and recorded in Deed Book 199, at Page 740. Also the same property conveyed to Heather D. Bowles, formerly Heather D. Jones, by David G. Jones, a single person, by Quitclaim Deed dated December 28, 2017 and recorded in Deed Book ____, at Page ____. All references to the Crittenden County Court Clerk's Office.

Form RD 3550-12
(Rev. 05-12)

**United States Department of Agriculture
Rural Housing Service**

Form Approved
OMB No. 0575-0172

Account #  ▓▓▓▓▓

## SUBSIDY REPAYMENT AGREEMENT

Only one agreement should be executed by the subject borrower for the subject property. The agreement is completed at the closing of the first Agency loan to the borrower regardless of whether or not they qualify for payment assistance at that time.

1. As required under section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with a loan under section 502 of the Housing Act of 1949 is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2. When the borrower transfers title or fails to occupy the home, recapture is due. This includes, but is not limited to, events of foreclosure and deeds in lieu of foreclosure. It the borrower refinances or otherwise pays in full without transfer of title and continues to occupy the property, the amount of recapture will be calculated, but payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated. If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until Government is paid in full. In situations where deferral of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement or in a timely manner after Agency notification to the borrower that recapture is due.

3. Amount of Recapture Due

a. Except as provided in paragraph 4, the amount of recapture due is the LESSER of either the amount of subsidy received, or the Portion of Value Appreciation subject to recapture as calculated under this paragraph.

b. The Portion of Value Appreciation subject to recapture is calculated as follows:

   Current market value (see paragraph 3(c))

   LESS

   Original amount of prior liens and subordinate affordable housing products (see paragraph 3(d)),

   Balance to be paid off on RHS loans (see paragraph 3(e)),

   Reasonable settlement costs (see paragraph 3(f)),

According to the Paperwork Reduction Act of 1995, no person are required to respond to a collection of information unless it display a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

GOVERNMENT
EXHIBIT
C

Principal reduction at note rate (see paragraph 3 (g)),

Original equity (see paragraph 3 (h)), and

Capital improvements (see paragraph 3(i)).

EQUALS

Value appreciation (If this is a positive value, continue. If this is a negative value or "$0", there is no recapture due.)

TIMES

Percentage of outstanding balance of open loans, if applicable (see paragraph 3(j)),

Recapture percentage (see paragraph 3(k)), and

Return on borrower's original equity (see paragraph 3(1)).

EQUALS

Portion of value Appreciation subject to recapture.

c. Current market value is the market value of the property at the time of the loan pay off; and is determined by an appraisal meeting Agency standards or an arm's length sales contract provided by the borrower upon Agency request.

d. The original amount of prior liens and subordinate affordable housing products is the total of all liens against the property at the time the loan is approved.

e. The balance to be paid off on RHS loans is the unpaid balance at the time of loan payoff, including principal, interest, fees, negative escrow, and protective advances.

f. Reasonable settlement cost are those which are currently reasonable and customary in the area, and documented by a good faith estimate by the lender or an estimate provided by the closing agent.

g. Principal reduction at note rate is the amount of RHS loan principal paid by the borrower to date. This does not include principal payments that are attributed to the payment assistance subsidy.

h. Original equity is the market value of the property LESS prior liens, subordinate affordable housing products and Rural Housing Single Family Housing loans when the original RHS loan was made. Market value at the time of loan approval generally is the LESSER of the: (1) sales price, construction/rehabilitation cost, or total of these costs, whichever is applicable; OR (2) appraised value at the time of loan approval. For Self-Help loans, the market value is the appraised value as determined at the time of loan approval/obligation, which is subject to completion per plans and specifications. If the house is not ultimately finished under the Self-Help program , an amended agreement using the market value definition in this paragraph must be used. If the applicant owns the building site free and clear, or if an existing non-Agency debt on the site without a dwelling will not be refinanced with Agency funds, the market value at the time of loan approval will be the lower of the appraised value or the construction cost plus the value of the site.

Market value at the time of original loan approval for the property located at:

241 Bridwell Loop

Marion, KY   42064                                    $ _____

LESS prior liens                                       $ _____   Held by _____

                                                       $ _____   Held by _____

LESS subordinate affordable housing products           $ _____   Held by _____

                                                       $ _____   Held by _____

LESS Rural Development Single Family Housing Loans  $ _____

EQUALS original equity (If negative number, use "0")   $ _____0.00_____

DIVIDE original equity by market value for

percentage of original equity                          _____0___ %

i.    Capital improvements are additions made to the property after the original RHS loan was made that add
      value above and beyond repairs necessary to maintain the property and keep it in good condition. The
      value of a capital improvement is determined by an appraisal, either obtained by the Agency or provided
      by the borrower upon Agency request, based on the change in the property's value attributable to
      the improvement. The cost of making the improvement will not be considered when making assessment.

j.    Percentage of outstanding balance of open loans applies if all loans are not subject to recapture, or if all
      loans subject to recapture are not being paid in full. To calculate the percentage of outstanding balance of
      open loans subject to recapture, divided the balance of RHS loans subject to recapture that are being paid
      by the balance of all open loans. Multiply the result by 100 to determine the percentage of the outstanding
      balance of open loans being paid.

k.    Recapture percentage is determined by the number of months the oldest loan subject to recapture has
      been outstanding and the average subsidized interest rate paid over the years. For example, in the chart
      below, if the oldest loan subject to recapture has been outstanding for 70 months and the average interest
      rate paid is 2.5%, the recapture percentage is .50.

| months loan outstanding | | Average interest rate paid | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 % | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
| 0 - 59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60 - 119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120 - 179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180 - 239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240 - 299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300 - 359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

l. Return on borrower's equity is the difference between 100 percent and the percentage of borrower's original equity.

4.  Foreclosure and Deed in Lieu. In case of foreclosure or deed- in-lieu of foreclosure (voluntary conveyance) to the Government, the amount of recapture due shall equal the total amount of subsidy received. Such amount will be recoverable from the security property only, not as a personal liability of the borrower.

5.  The Direct Single Family Housing Loan Program is administered under regulations at 7 C.F.R. part 3550. This agreement is subject to those regulations as well as any future amendments and successor regulations not inconsistent with this agreement.

Borrower agrees to pay recapture in accordance with this agreement.

| Borrower Heather D. Bowles | Date 12-28-2017 |
| Borrower | Date 12-28-2017 |

**BOOK 288 PAGE 420**

THIS REAL AND CHATTEL MORTGAGE made and entered
into this the __14__ day of August, 1985, by and between RUSSELL
B. FORD, JR. and wife, GWENDOLA A. FORD, Parties of the
First Part, MORTGAGORS; and FARMERS BANK & TRUST COMPANY
of Henderson, Kentucky, Party of the Second Part, MORTGAGEE;

WITNESSETH:  WHEREAS, Russell B. Ford, Jr.
and wife, Gwendola A. Ford, are justly indebted to the
Farmers Bank & Trust Company in the sum of FIFTY THOUSAND
DOLLARS ($50,000.00), evidenced by Mortgagors' promissory
note of even date herewith in the amount of $50,000.00
with interest thereon at the rate specified in said note.

NOW in order to secure the payment of the
aforesaid note and all installments of same as hereinafter
provided, together with all interest thereon, the Parties
of the First Part, Russell B. Ford, Jr. and wife, Gwendola
A. Ford, do hereby transfer, mortgage and convey unto the
Farmers Bank & Trust Company, its successors and assigns,
the following described real property located in Henderson
County, Kentucky, more particularly described as follows,
to-wit:

Two lots of land in the City of Corydon, Kentucky
described as follows:

Tract 1:  Beginning in the Second Cross Street at
S. W. corner G. W. McClures, home lot; thence N 29
deg. E 12 poles and 3 links to another corner of said
McClure's lot; thence N 60 1/2 deg. W 23 poles 11
links to a stake in the edge of the Henderson Road;
thence with said road S 29 deg. W 12 poles 3 links
to Second Cross Street; thence with said street S
60 1/2 E to the beginning.

Tract 2:  Beginning at a stake corner to George W.
McClure home place in the rear line of B. M. Powell;
thence North 32 East 69 feet to a stake in the line
of Ada McClure; thence at right angles west that width
to the Henderson and Corydon Road.

Being the same real property conveyed to Mortgagors
by deed from William Keith Greenwell and his wife,
Mary Carolyn Greenwell, dated April 17, 1979 and recorded
in Deed Book 312, page 171, in the Henderson County
Court Clerk's Office.

85   MTG 73 PG 205



295

GOVERNMENT
EXHIBIT
D

296

## BOOK 288 PAGE 421

ALSO included in this mortgage is following described real property located in Crittenden County, more particularly described as follows, to-wit:

TRACT 1:
A parcel or lot of land lying in Crittenden County Kentucky near the town of Marion and known as a part of the Haynes Land being in size 125 feet north and south and 450 feet east and west with an outlet leading from said lot southward so as to strike the public road between the school house lot and Emily Lewis lot, this lot adjoins the lots of Laura Bigham and McFee.

The above lot contains 1.29132 acres of land, be the same more or less.

(ALSO) A certain lot or parcel of ground near the town of Marion, Crittenden County, Kentucky, and known as a part of the Haynes Brothers Land and bounded as follows:

Beginning at a stake or stone, corner to Lewis and Todd running thence west course 450 feet to a stake or stone in Geo. C. Johnson's line; thence a north course 117 feet to a stake or stone in Lewis and Johnson line; thence east course 450 feet with Lewis line to a stake or stone; thence a south course with Lewis line 117 feet to the place of beginning.

The above lot contains 1.1857 acres of land, be the same, more or less.

Being the same real property conveyed to Russell B. Ford, Jr. from Russell B. Ford, Sr., unremarried widower, by deed dated September _____, 1974, of record in Deed Book 117 , page 150 , Crittenden County Clerk's Office.

Also to additionally secure the above mentioned note, Mortgagors, Russell B. Ford, Jr. and wife, Gwendola A. Ford, do hereby transfer, mortgage and convey unto the Farmers Bank & Trust Company, its successors and assigns, the following described personal property:

1/2 of 110 acres of corn located on Posey Farm in Henderson County, Kentucky.
2/3 of 25 acres of corn located on Cates Farm in Henderson County, Kentucky.
3/4 of 8 acres of corn located on Alderson Farm in Henderson County, Kentucky.
3/4 of 30 acres of  corn    located on Rayburn Farm in Crittenden County, Kentucky.
30 acres of   corn    located on Ford Farm in Crittenden County, Kentucky.
1/2 of 140 acres of soybeans located on Posey Farm in Henderson County, Kentucky.

-2-

BOOK 288 PAGE 422

This mortgage is subject to the following terms and conditions:

1. The makers of this note shall have the right and option at any time to prepay all or any part of the unpaid principal owing on said note without penalty or additional interest being charged by Mortgagee.

2. The Farmers Bank & Trust Company shall have the right and privilege one year from date of this note in the event it is renewed or at any time thereafter upon notification to the Mortgagors to adjust the rate of interest which said note shall thereafter bear not to exceed 6% above the then current federal discount rate.

3. In addition to the indebtedness above mentioned, this instrument shall secure any additional indebtedness or any additional sum or sums of money advanced or loaned by the Bank to the Mortgagors, or either of them, at any time, which additional indebtedness secured hereby shall not exceed, although it may fluctuate from time to time, $ _NONE_ .

4. Mortgagors are to pay all taxes and assessments levied against the above described real property and are to keep the improvements thereon insured against loss by fire and storm in some good and solvent insurance company for the benefit of the Farmers Bank & Trust Company to at least the amount of $_60,000.⁰⁰_ . Should said Mortgagors fail to pay the taxes or assessments or premiums on the insurance provided for herein, then any or all of such payments may be made by the Farmers Bank & Trust Company and the lien of this mortgage will extend to and secure the repayment to said Mortgagee of any such payments so made by it.

5. In the event of any default by Mortgagors under this mortgage, Mortgagee shall have the right to declare the entire unpaid balance of the note which is

297

2.98

## BOOK 288 PAGE 423

secured by this mortgage due and payable and to immediately enforce this mortgage through any means by law.  All costs, expenses and reasonable attorney's fees incurred by Mortgagee in enforcing payment of the indebtedness secured hereby shall be paid by Mortgagors and the lien of this mortgage extends to and secures all such expenses.

As it pertains to the two (2) tracts of land located in Henderson County, Kentucky, this mortgage is second and subordinate to that certain mortgage from Mortgagors to Farmers Bank & Trust Company dated March 27, 1985, of record in Mortgage Book 282, page 299, Henderson County Clerk's Office.

TO HAVE AND TO HOLD the above described real property with the appurtenances thereunto pertaining unto Mortgagee, its successors and assigns, with covenant of General Warranty, provided, however, when the indebtedness secured by this mortgage has been paid in full, Mortgagee shall promptly cause it to be released of public record.

IN TESTIMONY WHEREOF, witness the hands of the Parties of the First Part, this day and date first above written.

_____
RUSSELL B. FORD, JR.

_____
GWENDOLA A. FORD

STATE OF KENTUCKY
COUNTY OF HENDERSON
The foregoing instrument was acknowledged before me by RUSSELL B. FORD, JR. and wife, GWENDOLA A. FORD, on this the 1st day of August, 1985.
My commission expires January 26, 1988

_____
Notary Public, State of Ky.-at-Large

THIS INSTRUMENT PREPARED BY:

_____
DORSEY, SULLIVAN, KING & GRAY
318 Second Street
Henderson, Kentucky 42420

-4-

STATE OF KENTUCKY
COUNTY OF CRITTENDEN...SCT.

I, Denny E. Byford, Clerk of the County Court for the County and State aforesaid, certify that the foregoing Mortgage ............................... was on the 8th day of ........ day ........ 19 at 11:35 AM lodged, for record ............. with the foregoing and this cert.......... duly recorded in my said office.
Given under my hand this 8th ... day ........ 1988.... DENNY E. BYFORD, CLERK
BY........................ D.C.

**BOOK** 288 **PAGE** 424

STATE OF KENTUCKY
COUNTY OF HENDERSON . . . . . . . . . . Sct.
 I, NANCY D. BETHEL, Clerk of Henderson County, certify that the
foregoing *mortgage* was this day at 2:22 O'clock P. M.
lodged in my said office for record and that I have recorded it, the fore-
going and this certificate in my said office.
 Given under my hand this   2   day of *August* 1985

NANCY D. BETHEL, Clerk
BY *Jerry Matthews* D. C.

299

COMMONWEALTH OF KENTUCKY
DIVISION OF UNEMPLOYMENT INSURANCE
275 EAST MAIN STREET - 2ED
FRANKFORT, KY 40621-0001

**Notice of Recoupment Lien**

**DAVID JONES**
**241 BRIDWELL LOOP**
**MARION, KY 42064**

LIEN NO   364817
   SSN.   XXX-XX-1553
Eff Date   12-11-16
Clm Typ   UI   L.O.:52
Est. Date:   07-07-17

Pursuant to KRS 341.415 and KRS 341.310, notice is hereby given that DAVID JONES of CRITTENDEN COUNTY, an unemployment claimant, is indebted to the Commonwealth of Kentucky. EX REL.; Division of Unemployment Insurance for benefits erroneously paid including interest and penalties.

A lien on all properties of such claimant, created by KRS 341.415 in favor of the Division of Unemployment Insurance, exists on account of such indebtedness.

KRS 341.415 provides that: If the benefits paid were the result of a false statement, misrepresentation or concealment of material information by the recipient, interest at the rate of 1.5% per month or any part thereof may be imposed on and added to the unpaid balance until the overpayment is paid in full

Upon request, the Division of Unemployment Insurance will disclose the specific amount of overpaid benefits, interest and penalty to any interested party legally entitled to such information. Inquiry should be made to the Benefit Branch telephone number (502)564-2387.

This notice of lien has been prepared and executed by the undersigned in the performance of his official duties in the administration of KRS Chapter 341.

DIVISION OF UNEMPLOYMENT INSURANCE

BY
275 E. Main St., Frankfort, KY 40621

FILED THIS **27** DAY OF **Mon**   20**17**   AT **10:57** M. IN   **Crittenden**
COUNTY COURT CLERK **Carolyn Byford**   BOOK **Enc   20**   PAGE **280**

Instruction to the county court clerk: Request is hereby made to record this notice of lien in accordance with KRS 341 310. Mail one copy of recorded notice of lien showing book & page number where lodged, along with lien summary reports for payment of recording fee, to Cabinet for Human Resources Building, Division of Unemployment Insurance, Benefit Branch. Frankfort, Kentucky 40621

¡IMPORTANTE! Este documento(s) contiene información importante sobre sus derechos, obligaciones y/o beneficios de compensación por desempleo. Es muy importante que usted entienda la información contenida en este documento.

INMEDIATAMENTE: Si necesario, por favor de ir a la oficina de Kentucky Career Center, si necesita asistencia para traducir y entender la información contenida en el documento(s) que recibió, puede encontrar su oficina local en: www.kentuckycareercenter.com

012                                                   UI                                                   pv. 00

**Equal Education and Employment Opportunities M/F/D**

11330123 46867918                              Program code 01                              BYE 12/09/2017



GOVERNMENT
EXHIBIT
E

<sub>&#9781;</sub>JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA

## DEFENDANTS

HEATHER D. BOWLES, ET AL.

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   CRITTENDEN
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [x] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| [x] 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28 U.S.C. SECTION 1345
Brief description of cause:
RURAL HOUSING SERVICE (RHS) f/k/a FARMERS HOME ADMINISTRATION (FmHA) FEDERAL FORECLOSURE

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $
$131,830.83

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes [x] No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE
12/4/2019

SIGNATURE OF ATTORNEY OF RECORD
s/ William F. Campbell

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____